UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT CINCINNATI

| | |
|---|---|
| **TRUSTEES OF THE SOUTHWEST OHIO REGIONAL COUNCIL OF CARPENTERS PENSION PLAN**<br>6100 Oak Tree Boulevard, Suite 190<br>Independence, Ohio 44131<br><br>and<br><br>**TRUSTEES OF THE OHIO CARPENTERS' HEALTH FUND**<br>700 Tower Drive, Suite 300<br>Troy, Michigan 48098<br><br>and<br><br>**TRUSTEES OF THE OHIO CARPENTERS JOINT APPRENTICESHIP & TRAINING TRUST FUND**<br>361 Breaden Lane<br>Monroe, Ohio 45050<br><br>Plaintiffs,<br>v.<br><br>**D.A.G. CONSTRUCTION CO., INC.**<br>4924 Winton Road<br>Cincinnati, Ohio 45241<br><br>Defendant. | Case No. |

## **COMPLAINT**

1. This is an action pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C § 1001, *et seq*. Plaintiffs, Trustees of the Southwest Ohio Regional Council of Carpenters Pension Plan, Trustees of the Ohio Carpenters' Health Fund, and Trustees of the Ohio

Carpenters Joint Apprenticeship & Training Trust Fund (collectively the "Funds") are employee benefit plans that provide for pension and healthcare benefits. Defendant, D.A.G. Construction Co., Inc. is a union construction and maintenance contractor that performs services in Ohio. Defendant is obligated to remit contributions and withholdings to Plaintiffs based upon the number of hours worked by covered employees. Defendant has failed, or otherwise refuses, to remit full and correct contributions for work performed under a collective bargaining agreement. Plaintiffs are entitled to delinquent contributions, liquidated damages, interest, and withholdings for work performed by Defendant's employees under a collective bargaining agreement. Plaintiffs have a fiduciary duty to attempt to collect all amounts due to the Funds, and therefore this suit is levied.

## JURISDICTION AND VENUE

2. This action arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq*. Jurisdiction is conferred upon this Court pursuant to ERISA §§ 502 and 515, 29 U.S.C. §§ 1132 and 1145, as this is a suit against an employer for failing to make required contributions to an employee benefit plan. Jurisdiction is also conferred upon this Court pursuant to Section 301(a) of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185(a), as this suit alleges violations of a collective bargaining agreement involving an employer and labor organization.

3. Venue is appropriate in this Court under ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2) because the cause of action described herein is occurring within the jurisdiction of the U.S. District Court for the Southern District of Ohio, Western Division at Cincinnati.

## PARTIES

4. Plaintiffs, Trustees of the Southwest Ohio Regional Council of Carpenters Pension Plan ("Pension Plan Trustees"), are the fiduciaries of the Southwest Ohio Regional Council of

Carpenters Pension Plan ("Pension Plan"), a multiemployer, employee benefit plan and employee pension benefit plan within the meaning of ERISA § 3(37)(A), 29 U.S.C. § 1002(37)(A); ERISA § 3(3), 29 U.S.C. § 1002(3); and ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A). The Pension Plan resides in Southern Ohio, and is administered at 6100 Oak Tree Boulevard, Suite #190, Independence, Ohio 44131.

5. Plaintiffs, Trustees of the Ohio Carpenters' Health Fund ("Health Fund Trustees"), are the fiduciaries of the Ohio Carpenters' Health Fund ("Health Fund"), a multiemployer, employee benefit plan and employee welfare benefit plan within the meaning of ERISA § 3(37)(A), 29 U.S.C. § 1002(37)(A); ERISA § 3(3), 29 U.S.C. § 1002(3); and ERISA § 3(1)(A), 29 U.S.C. § 1002(1)(A). The Health Fund resides in Southern Ohio, and is administered at 700 Tower Drive, Suite #300, Troy, Michigan 48098.

6. Plaintiffs, Trustees of the Ohio Carpenters Joint Apprenticeship & Training Trust Fund ("Apprenticeship Fund Trustees"), are the fiduciaries of the Ohio Carpenters Joint Apprenticeship & Training Trust ("Apprenticeship Fund"), a multiemployer, employee benefit plan and employee welfare benefit plan within the meaning of ERISA § 3(37)(A), 29 U.S.C. § 1002(37)(A); ERISA § 3(3), 29 U.S.C. § 1002(3); ERISA § 3(1)(A), 29 U.S.C. § 1002(1)(A). The Apprenticeship Fund maintains its principal place of business at 361 Breaden Lane, Monroe, Ohio 45050.

**7.** Defendant, D.A.G. Construction Co., Inc. ("Defendant" or "D.A.G.") is a corporation organized under the laws of the State of Ohio with its principal place of business located at 4924 Winton Road, Cincinnati, Ohio 45241. At all material times herein, D.A.G. was an employer as defined by Section 3(5) of ERISA, 29 U.S.C. § 1002(5); and Section 2(2) of the

3

LMRA, 29 U.S.C. § 152(2). D.A.G. is engaged in interstate commerce and affecting commerce as defined in ERISA § 3(11) and (12), 29 U.S.C. § 1002(11) and (12).

## RELEVANT FACTS

8. The Pension Plan was established by an Amended Agreement and Declaration of Trust ("Pension Plan Trust Agreement") for the purpose of providing pension benefits. (Exhibit A, Pension Plan Trust Agreement, Article II, Sections 1, 8). The Pension Plan is an "employee pension benefit plan" as defined by ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A) and is a "multi-employer plan" as defined by ERISA § 3(37)(A), 29 U.S.C. § 1002(37)(A).

9. The Pension Plan is administered by the Pension Plan Trustees, a joint board of trustees composed of an equal number of employee and employer representatives as required by LMRA § 302(c)(5), 29 U.S.C. § 186(c)(5). The Pension Plan Trustees act as the "plan sponsor" of the Pension Plan as defined by ERISA § 3(16)(B)(iii), 29 U.S.C. § 1002(16)(B)(iii).

10. The Health Fund was established by an Agreement and Declaration of Trust ("Health Fund Trust Agreement") for the purpose of providing health benefits to employees and beneficiaries. (Exhibit B, Health Fund Trust Agreement, Article II, Sections 1, 8). The Health Fund is an "employee welfare benefit plan" as defined by ERISA § 3(1)(A), 29 U.S.C § 1002(1)(A) and is a "multi-employer plan" as defined by ERISA § 3(37)(A), 29 U.S.C. § 1002(37)(A).

11. The Health Fund is administered by the Health Fund Trustees, a joint board of trustees composed of an equal number of employee and employer representatives, as required by LMRA § 302(c)(5), 29 U.S.C. § 186(c)(5). The Health Fund Trustees act as the "plan sponsor" of the Health Fund as defined by ERISA § 3(16)(B)(iii), 29 U.S.C. § 1002(16)(B)(iii).

12. The Pension Plan was established by an Amended Agreement and Declaration of Trust ("Pension Plan Trust Agreement") for the purpose of providing pension benefits. (Exhibit

A, Pension Plan Trust Agreement, Article II, Sections 1, 8). The Pension Plan is an "employee pension benefit plan" as defined by ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A) and is a "multi-employer plan" as defined by ERISA § 3(37)(A), 29 U.S.C. § 1002(37)(A).

13. The Pension Plan is administered by the Pension Plan Trustees, a joint board of trustees composed of an equal number of employee and employer representatives as required by LMRA § 302(c)(5), 29 U.S.C. § 186(c)(5). The Pension Plan Trustees act as the "plan sponsor" of the Pension Plan as defined by ERISA § 3(16)(B)(iii), 29 U.S.C. § 1002(16)(B)(iii).

14. The Pension Plan and Health Fund Trustees are vested with the authority to collect employer contributions due to Pension Plan and Health Fund. (Exhibit A, Pension Plan Trust Agreement, Article II, Section 4; Exhibit B, Health Fund Trust Agreement, Article II, Section 4). Pursuant to this authority, the Pension Plan Trustees and Health Fund Trustees adopted a joint Collection and Delinquency Control Program ("Collection Policy"). (Exhibit D, Collection Policy).

15. At all relevant times, the Labor Relations Division, Cincinnati Division, AGC of Ohio, Inc., Associate General Contractors of America, was D.A.G.'s authorized representative for collective bargaining.

16. At all relevant times, D.A.G. was an employer bound to the terms of a collective bargaining agreement between the Labor Relations Division, Cincinnati Division, AGC of Ohio, Inc., Associate General Contractors of America and the Indiana/Kentucky/Ohio Regional Council of Carpenters, and its predecessors. The collective bargaining agreements which are relevant to this Complaint are the 2011-2014 Carpenters' Agreement (Exhibit E) and the 2014-2017 Carpenters' Agreement (collectively, "the CBA"). (Exhibit F).

17. As an employer party to the CBA, D.A.G. is obligated to submit hours worked reports and remit contributions to the Funds and deductions to the Union based upon the number of hours of covered work performed on its behalf. (Exhibit E, 2011 CBA, Article XIII at ¶¶ 72, 89, 92, 95 and Appendix A; Exhibit F, 2014 CBA, Article XIII at ¶¶ 75, 92, 95, 98 and Appendix A).

18. The CBA further requires that any subcontracting of covered work must be to an employer which is also a party to a CBA with the Union. (Ex. E, 2011-14 CBA, Art. XIII and XIV, p. 15-17; Ex. F, 2014-17 CBA, Art. XIII and XIV, p. 17-19).

19. The Plaintiffs and the Union retained Clark, Schaefer, Hackett & Co. to examine D.A.G.'s books and records and perform procedures intended to assist the Funds' Trustees in determining whether D.A.G. had complied with its contribution obligation.

20. The Payroll Compliance Report prepared by Clark, Schaefer, Hackett & Co. revealed thirty-six instances in the years 2011 through 2015 where which D.A.G. used non-union subcontractors to perform work covered by the CBA. No contributions were made to the Funds or deductions remitted to the Union for the covered work performed on D.A.G.'s behalf by these subcontractors. A copy of the Payroll Compliance Report is attached hereto as Exhibit G.

21. The CBA includes a Subcontracting Addendum, which allows for the use of non-union subcontractors for certain work without the requirement to contribute to the Funds, provided certain preconditions and notice requirements are met. (Ex. E, 2011 CBA, p. 24 (unnumbered); Ex. F, 2014 CBA, p. 24 (unnumbered)).

22. D.A.G. did not satisfy the preconditions and notice requirements of the Subcontracting Addendum.

23. Despite having an obligation to report and contribute to the Funds for all hours of covered work performed on its behalf, D.A.G. subcontracted substantial amounts of covered work to non-union employers and failed to report and contribute to the Funds for the work performed by those subcontractors.

24. The Payroll Compliance Report concludes that D.A.G. underpaid contributions to the Pension Fund by $345,243.09, to the Health Fund by $308,537.62, and to the Apprenticeship Fund by $20,562.53.

25. As a result of Defendant's conduct, Defendant is liable to Plaintiffs for delinquent contributions, liquidated damages, interest and reasonable attorney's fees pursuant to ERISA § 502(g)(2), 29 U.S.C. § 1132(g)(2), and LMRA § 301, 29 U.S.C. § 185.

### COUNT I
### Failure to Remit Contributions/Reports
### ERISA § 515, 29 U.S.C. § 1145

26. Plaintiffs repeat and reallege the allegations set forth in the above paragraphs as if fully rewritten herein.

27. As an employer party to the CBA, D.A.G. is obligated to submit hours worked reports and remit contributions based upon the number of hours worked by covered employees, to the Pension Plan, Health Fund and Apprenticeship Fund, in addition to other employee benefit funds. (Exhibit E, 2011 CBA, Article XIII at ¶¶ 72, 89, 92, 95 and Appendix A; Exhibit F, 2014 CBA, Article XIII at ¶¶ 75, 92, 95, 98 and Appendix A).

28. The Trust Agreements are incorporated by reference in the CBA. (Exhibit E, 2011 CBA, Article XIII at ¶¶ 91 and 94; Exhibit F, 2014 CBA, Article XIII at ¶¶ 94, 97). Furthermore, throughout the relevant time period, D.A.G. routinely submitted contributions to Plaintiffs, along with monthly remittance forms which contained the following language: "I hereby certify the information submitted on this report is true and correct and agree to be bound by the terms of

7

payment to the funds covered by this reporting form, as set forth in the collective bargaining and trust agreement."

29. The Trust Agreements require that employers remit contributions in accordance with the terms of the applicable CBA. (Exhibit A, Pension Plan Trust Agreement, Article II, Section 2; Exhibit B, Health Fund Trust Agreement, Article II, Section 2).

30. Pursuant to the authority granted in the Trust Agreements, the Pension Plan Trustees and Health Fund Trustees adopted collection policies. (Exhibits C and D, Collection Policies). The CBA and Collection Policies require contributing employers to make fringe benefit contributions in the month following the month in which the work was performed. (Exhibit C, Section A(1) and Exhibit D).

31. Despite having an obligation to submit hours worked reports and remit contributions to the Funds, D.A.G. failed or otherwise neglected to report and remit all required contributions to the Funds.

32. An examination of D.A.G.'s payroll records was conducted for the period of January 1, 2009 through June 30, 2016 ("the Audit Period"). (Exhibit G, Payroll Compliance Report).

33. As disclosed in the resulting Payroll Compliance Report, D.A.G. failed to report 51,406.99 hours of work covered under the CBA performed by subcontractors on its behalf between 2011 and 2015, and also failed to make the required fringe benefit contributions for those hours. The fringe benefit contributions D.A.G. failed to remit to the Pension Fund by $345,243.09, to the Health Fund by $308,537.62, and to the Apprenticeship Fund by $20,562.53. (Exhibit G, Payroll Compliance Report, Sched. 1.2).

34.     D.A.G.'s actions are in violation of ERISA § 515, 29 U.S.C. § 1145, and therefore Plaintiffs are entitled to delinquent contributions, liquidated damages, accruing interest, and reasonable attorney's fees pursuant to ERISA § 502(g)(2), 29 U.S.C. § 1132(g)(2).

## COUNT II
### Breach of Contract & Failure to Remit Contributions/Reports
### LMRA § 301, 29 U.S.C. § 185

35.     Plaintiffs repeat and reallege the allegations set forth in the above paragraphs as if fully rewritten herein.

36.     As an employer party to the CBA, D.A.G. is obligated to submit hours worked reports and remit contributions based upon the number of hours worked by covered employees, to the Pension Plan, Health Fund and Apprenticeship Fund, in addition to other employee benefit funds. (Exhibit E, 2011 CBA, Article XIII at ¶¶ 72, 89, 92, 95 and Appendix A; Exhibit F, 2014 CBA, Article XIII at ¶¶ 75, 92, 95, 98 and Appendix A).

37.     The Trust Agreements are incorporated by reference in the CBA. (Exhibit E, 2011 CBA, Article XIII at ¶¶ 91 and 94; Exhibit F, 2014 CBA, Article XIII at ¶¶ 94, 97). Furthermore, throughout the relevant time period, D.A.G. routinely submitted contributions to Plaintiffs, along with monthly remittance forms which contained the following language: "I hereby certify the information submitted on this report is true and correct and agree to be bound by the terms of payment to the funds covered by this reporting form, as set forth in the collective bargaining and trust agreement."

38.     The Trust Agreements require that employers remit contributions in accordance with the terms of the applicable CBA. (Exhibit A, Pension Plan Trust Agreement, Article II, Section 2; Exhibit B, Health Fund Trust Agreement, Article II, Section 2).

39.     Pursuant to the authority granted in the Trust Agreements, the Pension Plan Trustees and Health Fund Trustees adopted collection policies. (Exhibits C and D, Collection

Policies). The CBA and Collection Policies require contributing employers to make fringe benefit contributions in the month following the month in which the work was performed. (Exhibit C, Section A(1) and Exhibit D).

40. Despite having an obligation to submit hours worked reports and remit contributions to the Funds, D.A.G. failed or otherwise neglected to report and remit all required contributions to the Funds.

41. An examination of D.A.G.'s payroll records was conducted for the period of January 1, 2009 through June 30, 2016 ("the Audit Period"). (Exhibit G, Payroll Compliance Report).

42. As disclosed in the resulting Payroll Compliance Report, D.A.G. failed to report 51,406.99 hours of work covered under the CBA performed by subcontractors on its behalf between 2011 and 2015, and also failed to make the required fringe benefit contributions for those hours. The fringe benefit contributions D.A.G. failed to the Pension Fund by $345,243.09, to the Health Fund by $308,537.62, and to the Apprenticeship Fund by $20,562.53. (Exhibit G, Payroll Compliance Report, Sched. 1.2).

43. Defendant's conduct is in breach of the CBA, Trust Agreements, and Collection Policy, and therefore Plaintiffs are entitled to relief pursuant to LMRA § 301, 29 U.S.C. § 185.

**COUNT III**
**Failure to Pay Liquidated Damages and Interest**
**ERISA § 515, 29 U.S.C. § 1145**

44. Plaintiffs repeat and reallege the allegations set forth in the above paragraphs as if fully rewritten herein.

45. As an employer party to the CBA, D.A.G. is obligated to submit hours worked reports and remit contributions based upon the number of hours worked by covered employees, to the Pension Plan, Health Fund and Apprenticeship Fund, in addition to other employee benefit

funds. (Exhibit E, 2011 CBA, Article XIII at ¶¶ 72, 89, 92, 95 and Appendix A; Exhibit F, 2014 CBA, Article XIII at ¶¶ 75, 92, 95, 98 and Appendix A).

46. The Trust Agreements are incorporated by reference in the CBA. (Exhibit E, 2011 CBA, Article XIII at ¶¶ 91 and 94; Exhibit F, 2014 CBA, Article XIII at ¶¶ 94, 97). Furthermore, throughout the relevant time period, D.A.G. routinely submitted contributions to Plaintiffs, along with monthly remittance forms which contained the following language: "I hereby certify the information submitted on this report is true and correct and agree to be bound by the terms of payment to the funds covered by this reporting form, as set forth in the collective bargaining and trust agreement."

47. Pursuant to the authority granted in the Trust Agreements, the Pension Plan Trustees and Health Fund Trustees adopted collection policies. (Exhibits C and D, Collection Policies). The CBA and Collection Policies require contributing employers to make fringe benefit contributions in the month following the month in which the work was performed. (Exhibit C, Section A(1) and Exhibit D).

48. The Collection Policies provide that, in the event an employer is delinquent in contributing to the fringe benefit funds and the matter is referred to counsel for collection, the employer is obligated to pay liquidated damages to the Pension Fund of 20% of the amount of the unpaid contributions, along with simple interest at the rate of 1% per month on the unpaid contributions, beginning from the due date, plus attorney's fees and court costs. (Exhibit C, Pension Fund Collection Policy, Sections C, D). The employer is likewise obligated to pay liquidated damages to the Health Fund of 10% of the amount of the unpaid contributions, plus 10% interest per year (Exhibit D, Health Fund Collection Policy, ¶ 5).

11

49. The Collection Policy further provides that in the event an audit of an employer's payroll records reveals that the amount contributed by the employer was at least 5% less than the amount due and owing, the employer will be responsible for the full expenses of the audit. (Exhibit C, Pension Fund Collection Policy, Section F).

50. The expenses incurred by Plaintiffs for the audit of Defendant's payroll records total $4,500.00.

51. Under the terms of the Collection Policies and 29 U.S.C. §1132(g), Defendant is liable to Plaintiffs for all unpaid contributions, liquidated damages, interest, audit expenses, and attorney's fees and costs.

52. Defendant's conduct is in violation of ERISA §515, 29 U.S.C. §1145, and Plaintiffs seek to remedy that violation pursuant to ERISA §515, 29 U.S.C. §1145.

### COUNT IV
**Breach of Contract & Failure to Pay Liquidated Damages and Interest**
**LMRA § 301, 29 U.S.C. § 185**

53. Plaintiffs repeat and reallege the allegations set forth in the above paragraphs as if fully rewritten herein.

54. As an employer party to the CBA, D.A.G. is obligated to submit hours worked reports and remit contributions based upon the number of hours worked by covered employees, to the Pension Plan, Health Fund and Apprenticeship Fund, in addition to other employee benefit funds. (Exhibit E, 2011 CBA, Article XIII at ¶¶ 72, 89, 92, 95 and Appendix A; Exhibit F, 2014 CBA, Article XIII at ¶¶ 75, 92, 95, 98 and Appendix A).

55. The Trust Agreements are incorporated by reference in the CBA. (Exhibit E, 2011 CBA, Article XIII at ¶¶ 91 and 94; Exhibit F, 2014 CBA, Article XIII at ¶¶ 94, 97). Furthermore, throughout the relevant time period, D.A.G. routinely submitted contributions to Plaintiffs, along with monthly remittance forms which contained the following language: "I hereby certify the

information submitted on this report is true and correct and agree to be bound by the terms of payment to the funds covered by this reporting form, as set forth in the collective bargaining and trust agreement."

56. Pursuant to the authority granted in the Trust Agreements, the Pension Plan Trustees and Health Fund Trustees adopted collection policies. (Exhibits C and D, Collection Policies). The CBA and Collection Policies require contributing employers to make fringe benefit contributions in the month following the month in which the work was performed. (Exhibit C, Section A(1) and Exhibit D).

57. The Collection Policies provide that, in the event an employer is delinquent in contributing to the fringe benefit funds and the matter is referred to counsel for collection, the employer is obligated to pay liquidated damages to the Pension Fund of 20% of the amount of the unpaid contributions, along with simple interest at the rate of 1% per month on the unpaid contributions, beginning from the due date, plus attorney's fees and court costs. (Exhibit C, Pension Fund Collection Policy, Sections C, D). The employer is likewise obligated to pay liquidated damages to the Health Fund of 10% of the amount of the unpaid contributions, plus 10% interest per year (Exhibit D, Health Fund Collection Policy, ¶ 5).

58. The Collection Policy further provides that in the event an audit of an employer's payroll records reveals that the amount contributed by the employer was at least 5% less than the amount due and owing, the employer will be responsible for the full expenses of the audit. (Exhibit C, Pension Fund Collection Policy, Section F).

59. The expenses incurred by Plaintiffs for the audit of Defendant's payroll records total $4,500.00.

60.     Under the terms of the Collection Policies and 29 U.S.C. §1132(g), Defendant is liable to Plaintiffs for all unpaid contributions, liquidated damages, interest, audit expenses, and attorney's fees and costs.

61.     Defendant's conduct is in breach of the CBA, Trust Agreements, and Collection Policy, and therefore Plaintiffs are entitled to liquidated damages, interest, and audit expenses pursuant to LMRA § 301, 29 U.S.C. § 185.

**WHEREFORE**, Plaintiffs demand the following relief:

A.     Judgment on behalf of Plaintiffs and against Defendant for unpaid contributions in the amount of $345,243.09 to the Pension Fund, $308,537.62 to the Health Fund, and $20,562.53 to the Apprenticeship Fund, plus any unpaid contributions which should accrue during the pendency of this action, as provided under ERISA § 502(g), 29 U.S.C. § 1332(g)(2)(A);

B.     Judgment on behalf of Plaintiff, the Pension Fund, and against Defendant for accumulated interest at the rate of 1% per month for unpaid contributions from the respective due dates of such contributions, and liquidated damages equal to 20% of the unpaid contributions;

C.     Judgment on behalf of Plaintiff, the Health Fund, and against Defendant for accumulated interest at the rate of 10% per year for unpaid contributions from the respective due dates of such contributions, and liquidated damages equal to 10% of the unpaid contributions;

D.     Judgment against the Defendant for audit expenses, in accordance with the terms of the Collection Policy;

E. An award of reasonable attorney's fees incurred in connection with the collection of the unpaid amounts as provided for by the terms of the agreements and ERISA § 502(g), 29 U.S.C. § 1132(g)(2)(D); and

F. Any other legal or equitable relief which the Court deems just as provided for under ERISA § 502(g)(2)(E), 29 U.S.C. § 1132(g)(2)(E), pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3).

Respectfully submitted,

s/ Thomas R. Kendall
Thomas R. Kendall (0080996)
Stephen P. Nevius (0092598)
**LEDBETTER PARISI LLC**
5078 Wooster Road, Suite 400
Cincinnati, OH 45226
937-619-0900
937-619-0999 (fax)
tkendall@fringebenefitlaw.com
snevius@fringebenefitlaw.com
*Counsel for Plaintiffs*